1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT**

7

**FOR THE DISTRICT OF ARIZONA**

8

9  | Jerry Walker,

No. CV-15-08288-PCT-JZB

10 |            Plaintiff,

**REPORT AND
RECOMMENDATION**

11 | v.

12 | Emil Botezatu, et al.,

13 |            Defendants.

14

15      TO THE HONORABLE G. MURRAY SNOW, UNITED STATES DISTRICT

16 JUDGE:

17      Pending before the Court is Plaintiff's First Amended Complaint (Doc. 12),[1] and

18 Defendant Emil Botezatu's Motion to Dismiss (Doc. 17).  For the reasons below, the

19 Court finds that it lacks subject matter jurisdiction over this matter.  Therefore, it will

20 recommend that Defendant's Motion to Dismiss for lack of subject matter jurisdiction be

21 granted and this case be dismissed for lack of jurisdiction.[2]

22

23      [1] Plaintiff filed two First Amended Complaints, which appear to be identical. (Docs. 10, 12.)  The Court will treat Plaintiff's First Amended Complaint at Doc. 12 as the operative Complaint.

24

25      [2] During the January 31, 2017 hearing in this matter, Judge Boyle advised that he would grant Defendant Botezatu's Motion to Dismiss.  Both Plaintiff and Defendant Botezatu have consented to Magistrate Judge jurisdiction.  (Docs. 7, 20.)  However, Because Defendant Derossetti has been served but has not appeared or consented to Magistrate Judge jurisdiction, out of an abundance of caution, the Court issues this Report and Recommendation on Defendant Botezatu's Motion to Dismiss for lack of subject matter jurisdiction.  *See Allen v. Meyer*, 755 F.3d 866, 867 (9th Cir. 2014) (finding Magistrate Judge dismissal order invalid because it was entered without the consent of both parties).

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    Background

On November 27, 2015, Plaintiff filed his initial Complaint, and an Application to Proceed in District Court Without Prepaying Fees and Costs.  (Docs. 1, 2.)  On April 25, 2016, the Court granted Plaintiff's Application and, after screening, dismissed the Complaint with leave to amend.   (Doc. 8.)  Plaintiff filed his First Amended Complaint on May 23, 2016. (Doc. 12.) Plaintiff's First Amended Complaint asserts claims for "Intentional infliction of emotional harm" and "Theft and related offenses" against Defendants Emil Botezatu and Andre Derossetti, and fictitiously-named Defendants John Doe 1-10.  (*Id.* at 5.)  Plaintiff alleges this Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  (*Id.* ¶ 1.) Plaintiff claims that he is a United States citizen, currently residing in Mohave County, Arizona (*id.* ¶ 2), Defendant Botezatu is a citizen of Romania, is illegally present in the United States, and resides in Las Vegas, Nevada (*id.* ¶¶ 3, 31-32), and Defendant Derossetti, who has not appeared in this action, is "a Romanian born associate of Defendant Botezatu, currently residing in Las Vegas, Nevada" (*id.* ¶ 4).

On June 17, 2018, Plaintiff filed Proof of Service Forms stating that Defendants were served on May 22, 2016.  (Docs. 15, 16.)[3]  On August 4, 2016, Defendant Botezatu filed a Motion to Dismiss for lack of subject matter and personal jurisdiction, improper venue, and failure to state a claim.  (Doc. 17.) With regard to subject matter jurisdiction, Defendant Botezatu argues that the requirements of diversity jurisdiction are not met in this action because: (1) Plaintiff and Defendant Botezatu are both citizens of the United States and domiciled in Nevada; (2) Plaintiff has failed to establish that Defendant Derossetti is domiciled somewhere other than in Nevada, and (3) Plaintiff has failed to

---

[3] Pursuant to 28 U.S.C. § 1915(e)(2), the Court ordinarily screens complaints proceeding *in forma pauperis* before service. However, the Clerk of Court mistakenly issued Plaintiff Summons for both Defendants.  Because Defendant Botezatu has appeared and challenges the Court's subject matter jurisdiction over this action, the Court addresses that issue in this Report and Recommendation.  *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004) (a federal court is obligated to inquire into its subject matter jurisdiction in each case and to dismiss a case when subject matter jurisdiction is lacking).

sufficiently establish the amount in controversy requirement.  (*Id.* at 9-11.)  Defendant Botezatu filed an Affidavit in support of his Motion to Dismiss, averring he is a dual citizen of Romania and the United States, and he is domiciled in Nevada.  (*Id.* at 18.)

On August 18, 2016, the Court issued Plaintiff a Warning Order, advising him that he must respond to Defendant's Motion to Dismiss, and setting a response deadline. (Doc. 19.)  The Court's Order further specifically advised Plaintiff that if he failed to respond to Defendant's Motion, the Court may grant it, and, if the Court does so, Plaintiff's case would end.  (*Id.*)

Plaintiff filed his Response on September 19, 2016.  (Doc. 21.)  In his Response, Plaintiff does not dispute that he is domiciled in Nevada and only living temporarily in Arizona.  Rather, Plaintiff alleges that Defendant is lying regarding his United States citizenship.  Plaintiff further asserts that the Seventh Circuit Court's decision in *Botezatu v. INS*, 195 F.3d 311 (7th Cir. 1999), makes it impossible for Defendant Botezatu to now be a United States citizen.  Plaintiff also filed Affidavits from two witnesses alleging that Defendant Botezatu has assisted them or others in entering the United States illegally. (Docs. 22, 24.)

Defendant Botezatu argues in his Reply that Plaintiff's Affidavits are insufficient to defeat his Motion to Dismiss. (Doc. 25 at 6.) However, Defendant Botezatu's Reply does not specifically address the Seventh Circuit Court's decision in *Botezatu*, or the decision's impact on Defendant's citizenship status in the United States.  Accordingly, on December 1, 2016, the Court ordered Defendant Botezatu to file supplemental briefing regarding his citizenship status in the United States.   (Doc. 26.)

On December 27, 2016, Defendant Botezatu filed his briefing, as well as a photocopy of his United States Passport and Passport Card, issued in October 2014. (Doc. 27.) On January 4, 2017, the Court issued an Order allowing Plaintiff until January 18, 2017 to file a response to Defendant's Supplemental Brief.  (Doc. 28.)   On January 9, 2017, Plaintiff filed a document titled Plaintiff's Request for Judicial Notice in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss the Case.  (Doc. 29.)    On

January 17, 2017, Plaintiff filed an additional Response to Defendant Botezatu's Supplemental Brief.   (Doc. 30.)   In both filings, Plaintiff asserts that Defendant Botezatu's Passport and Passport Card are forgeries, and Plaintiff requests the Court hold a hearing regarding Defendant Botezatu's United States citizenship.  (Doc. 30.)

The Court subsequently set a hearing for January 31, 2017, regarding subject matter jurisdiction.  (Doc. 31.)  On January 24, 2017, Plaintiff filed a Request to Waive Personal Appearance, requesting that his "acquaintance," John Badea, be allowed to appear instead of Plaintiff.   (Doc. 32.)   The next day, the Court denied Plaintiff's Request, and further warned Plaintiff that his case may be dismissed if he failed to appear at the hearing as ordered.  (Doc. 33.)  Plaintiff did not appear at the hearing.  Defendant Botezatu appeared at the hearing and presented additional evidence regarding his United States citizenship and Nevada domicile.

## II.   Subject Matter Jurisdiction

### a.  Legal Standards

Unlike state courts, federal courts only have jurisdiction over a limited number of cases, and those cases involve either a controversy between citizens of different states (diversity jurisdiction) or a question of federal law (federal question jurisdiction). *See* 28 U.S.C. §§ 1331, 1332. The United States Supreme Court has stated that a federal court must not disregard or evade the limits on its subject matter jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Thus, the Court is obligated to inquire into its subject matter jurisdiction in each case and to dismiss a case when such jurisdiction is lacking. *See Valdez*, 372 F.3d at 1116; Fed. R. Civ. P. 12(h)(3).   Here, Plaintiff asserts that this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.  (Doc. 12 ¶ 1.)

The United States Code specifies the requirements for federal subject matter jurisdiction based on diversity:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between--

(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) a foreign state, defined in section 1603(a) of this title[28 USCS § 1603(a)], as plaintiff and citizens of a State or of different States. 28 U.S.C. § 1332(a).

*See* 28 U.S.C. § 1332.   "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." *Rattlesnake Coal. v. E.P.A.*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007).   Further, "[t]he party asserting jurisdiction has the burden of proving all jurisdictional facts," including diversity of citizenship.  *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).   Where a defendant factually challenges the assertion of jurisdiction, the Court may consider evidence extrinsic to the complaint. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009).

Diversity jurisdiction requires complete diversity; meaning, every plaintiff must be diverse from every defendant. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).  To establish a party's citizenship in a particular state, a party must prove that the person is "domiciled" in that state.  *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). A natural person is domiciled in the location in which he or she has established a fixed habitation or adobe, and has an intention to remain permanently or indefinitely. *Owens v. Huntling*, 115 F.2d 160, 162 (9th Cir. 1940) (citations omitted). Dual citizens of the United States and a foreign state are considered to be citizens of the American state where they are domiciled. *See Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 711 (9th Cir. 1992).

"[T]he existence of domicile for purposes of diversity is determined as of the time the lawsuit is filed." *Lew*, 797 F.2d at 750. "'Domicile' is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another." *Miss.*

*Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).  A change in domicile requires the physical presence at the new location with an intention to remain there indefinitely.  *See Williamson v. Osenton*, 232 U.S. 619, 624 (1914); *Lew*, 797 F.2d at 750. A person's old domicile is not lost until a new one is acquired, and there is a presumption in favor of an established domicile as against an allegedly newly acquired one.  *Lew*, 797 F.2d at 750-51.

   **b.  Discussion**

   Plaintiff has failed to establish that the Court has diversity jurisdiction over this case.  First, Plaintiff does not dispute that his domicile at the time this lawsuit was filed, and when Plaintiff filed his First Amended Complaint, was in Nevada, not Arizona.  In his Complaint and First Amended Complaint, Plaintiff asserts that he is a United States citizen, currently residing in Mohave County, Arizona.  (Doc. 1 ¶ 2; Doc. 12 ¶ 2.) However, Plaintiff also asserts in both Complaints that he "has been living in Las Vegas for most of the last 30 years," and only "temporarily" lives in Arizona to evade Defendants' alleged attempts to threaten or harm him.  (Doc. 1 ¶¶ 19-20; Doc. 12 ¶¶ 21-22.)  Plaintiff subsequently submitted to this Court an Affidavit alleging that "[f]earing for my life or being physically harmed, I moved to the City of Kingman, Arizona, where I used to live and work a decade ago."  (Doc. 23 at 1.)  However, Plaintiff has not alleged or provided any objective evidence that his domicile changed to Arizona, even though Defendant Botezatu raised Plaintiff's domicile as an issue in the Motion to Dismiss. Therefore, the Court finds that Plaintiff's domicile at the time he filed this action was in Nevada.  *Lew*, 797 F.2d at 750-51.

   Second, the Court finds that at the time this lawsuit was filed, and when Plaintiff filed his First Amended Complaint, Defendant Botezatu was a citizen of the United States and domiciled in Nevada.  Plaintiff does not dispute that Defendant Botezatu has resided in Nevada for several years or that he intends to remain there permanently.  Rather, Plaintiff claims only that Defendant Botezatu is a citizen of Romania and is present in the United States illegally.  However, with his Supplemental Brief, Defendant Botezatu

provided the Court with a photocopy of his United States Passport and Passport Card, both issued on October 17, 2014, before Plaintiff filed this action.  (Doc. 27 at 5.)  The documents include his picture, name, and sex, and confirm that he was a citizen of the United States in 2014.  Plaintiff claims these documents are forged, but provides no support for that assertion.  Further, at the hearing, Defendant Botezatu provided the Court with his Passport and Passport Card for inspection.  The Court inspected the Passport and Passport Card and finds no reason to dispute the authenticity of those documents.

Finally, Plaintiff does not address, in his pleadings or briefing, whether Defendant Derossetti is a lawful permanent resident or citizen of the United States or where he is domiciled.  Rather, Plaintiff alleges in his Amended Complaint that Defendant Derossetti "is a Romanian born associate of Defendant Botezatu," and "currently resid[es] in Las Vegas, Nevada."  (Doc. 12 ¶ 4.)[4]

Based on the above, the Court finds that both Plaintiff and Defendant Botezatu were citizens of and domiciled in Nevada at the time this action was filed.  Plaintiff has not established in what state in the United States Defendant Derossetti is a citizen or domiciled, if any.  Therefore, the Court finds that it does not have subject matter jurisdiction over this action, and recommends that this case be dismissed.[5]

Accordingly,

**IT IS RECOMMENDED** that Defendant Botezatu's Motion to Dismiss (Doc. 17) for lack of subject matter jurisdiction be granted, and the remainder of the Motion to Dismiss be denied as moot.

**IT IS FURTHER RECOMMENDED** that this case be dismissed for lack of

---

[4] Plaintiff did not name Derossetti as a Defendant until he filed his First Amended Complaint.

[5] As stated above, Plaintiff did not appear for the hearing.  The Court does not make any inferences against Plaintiff based on his failure to appear.  Further, although the Court took additional evidence from Defendant Botezatu during the hearing, which further established his United States citizenship and Nevada domicile, the Court would reach the same conclusion regarding its lack of jurisdiction over this matter based solely on the parties' briefing.  Based on the briefing, both Plaintiff and Defendant Botezatu were citizens of the United States and domiciled in Nevada at the time this case was filed and, therefore, diversity of citizenship does not exist in this case.

subject matter jurisdiction.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.  The parties shall have 14 days from the date of service of a copy of this Report and Recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72.  Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's Report and Recommendation.  *See* Fed. R. Civ. P. 72.

Dated this 2nd day of February, 2017.

Honorable John Z. Boyle
United States Magistrate Judge